U.S. DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| Axel Braun Productions<br>19360 Rinaldi Street, #405<br>Porter Ranch, CA 91326<br><br>Plaintiff,<br><br>v.<br><br>DOES 1 – 7098<br><br>Defendants. | Case Number 3:10-cv- 00112 |

**DECLARATION OF MATTHIAS SCHROEDER PADEWET IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE**

I, Matthias Schroeder Padewet, declare:

1. I am the President of Excubitor USA, Inc., a company incorporated in Nevada with its principal address at 4550 West Oakey Blvd. #111H, Las Vegas, NV 89102. Excubitor is a provider of online anti-piracy services for the motion picture industry. Before my employment with Excubitor, I held various positions at companies that developed software technologies. I have approximately ten years of experience related to digital media and computer technology.

2. I submit this declaration in support of Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference. This declaration is based on my personal knowledge, and if called upon to do so, I would be prepared to testify as to its truth and accuracy.

3. At Excubitor, I am the head of the department that carries out evidence collection and provides litigation support services. I work closely with our research team to create credible processes to scan for, detect, and download copies of copyrighted material on multiple network protocols for use by copyright owners.

4. Excubitor has licensed a proprietary technology that provides an effective means to detect the unauthorized distribution of movies and other content and files over online media distribution systems, or "peer-to-peer" ("P2P") networks. Excubitor's technology enables it to detect and monitor the unlawful transfer and distribution of files amongst the P2P network by different protocols. Those protocols make even small computers with low bandwidth capable of participating in large data transfers across a P2P

network. The initial file-provider intentionally elects to share a file with P2P networks. This is called "seeding". Other users ("peers") on the network connect to the seed file to download. As yet additional peers request the same file, each additional user becomes a part of the network from where the file can be downloaded. However, unlike a traditional P2P network, each new file downloader is receiving a portion of the data from each connected user who has already downloaded a part of the file that together comprises the whole. This means that every "node" or peer user who has a copy of the infringing copyrighted material on a P2P network investigated by our software must necessarily also be a source of download for that infringing file.

5. This distributed nature of the P2P networks typically leads to a rapid viral spreading of a file throughout peer users. Because of the nature of a P2P network, any peer who has downloaded a part of the file prior to the time a subsequent peer downloads the same file is a possible source for the subsequent peer so long as that first peer is online at the time the subsequent peer downloads a file.

6. The Plaintiff in this action is producer and distributor of motion pictures. The Plaintiff engaged the Adult Copyright Company to, among other tasks, document evidence of the unauthorized reproduction and distribution of the copyrighted motion picture to which Plaintiff holds the exclusive distribution and licensing rights, ***"Batman XXX: A Porn Parody"*** (the "Motion Picture"), within the United States of America, including West Virginia.

7. Adult Copyright Company, in turn, retained Excubitor to monitor and identify copyright infringement of Plaintiff's copyrighted Motion Picture on P2P networks. On behalf of Plaintiff, we engaged in a specific process utilizing Excubitor's specially designed software technology to identify direct infringers of Plaintiff's copyrights using protocols investigated by Excubitor's software on P2P networks.

8. The search function of the P2P network was used to look for network users who were offering for distribution audiovisual files that were labeled with the names of Plaintiff's copyrighted Motion Picture. Excubitor then conducted a download of the respective content and careful and thorough review of that data. Unique hash values of these files were extracted from the original torrent-file as soon as the content has been verified as a valid copy of Plaintiff's copyrighted Motion Picture. Excubitor started searching for individuals making the content identified by these hash values available to the public. When a network user was located who was making that content available for distribution, Excubitor downloaded a part of

that file(s) and stored other specific information in order to confirm that infringement was occurring and to identify the infringer by the unique Internet Protocol ("IP") address assigned to that Defendant by his/her ISP on the date and at the time of the Defendant's infringing activity.

9. All of the infringers named as Doe Defendants were identified in the following way: Our software is connected to a number of files of illegal versions of the Motion Picture. All infringers connected to those files will be investigated through downloading a part of the file placed on their computer. This evidence is saved on our service and could be shown to the court as evidence if necessary.

10. Once Excubitor's searching software program identifies an infringer in the way described herein for the Motion Picture for which Plaintiff owns the exclusive licensing and distribution rights, we obtain the Internet Protocol ("IP") address of a user offering the file for download. In addition to the file of the motion picture itself, we download or otherwise collect publicly available information about the network user that is designed to help Plaintiff identify the infringer. Among other things, we download or record for each file downloaded: (a) the time and date at which the file or a part of the file was distributed by the user; (b) the IP address assigned to each user at the time of infringement; and, in some cases, (c) the video file's metadata (digital data about the file), such as title and file size, that is not part of the actual video content, but that is attached to the digital file and helps identify the content of the file. We then create evidence logs for each user that store all this information in a database.

**The Need For Expedited Discovery**

11. Obtaining the identity of copyright infringers on an expedited basis is critical to prosecution of this action and stopping the continued infringement of this copyrighted Motion Picture. Without expedited discovery in the instant case, Plaintiff has no way of serving Defendants with the complaint and summons in this case. Plaintiff does not have Defendants' names, addresses, e-mail addresses, or any other way to identify or locate Defendants, other than the unique IP address assigned to each Defendant by his/her ISP on the date and at the time of the Defendant's infringing activity.

12. Further, Internet service providers have different policies pertaining to the length of time they preserve session data which identify their subscribers. Despite requests to preserve the information, some ISPs keep the session data of their subscribers' activities for only limited periods of time -- sometimes as little as weeks or even days -- before erasing the data they contain. If an ISP does not have to respond expeditiously to a discovery request, the identification information in that ISP's logs may be erased.

13. An IP address is, in combination with the date, a unique numerical identifier that is automatically assigned to a user by its Internet Service Provider ("ISP") each time a user logs on to the network. Each time a subscriber logs on, he or she may be assigned a different IP address unless the user obtains from his/her ISP a static IP address. ISPs are assigned certain blocks or ranges of IP addresses. ISPs keep track of the IP addresses assigned to its subscribers at any given moment and retain such "user logs" for a very limited amount of time. These user logs provide the most accurate means to connect an infringer's identity to its infringing activity.

14. Although users' IP addresses are not automatically displayed on the P2P networks, any user's IP address is readily identifiable from the packets of data being exchanged. The exact manner in which we determine a user's IP address varies by P2P network.

15. An infringer's IP address is significant because it is becomes a unique identifier that, along with the date and time of infringement, specifically identifies a particular computer using the Internet. However, the IP address does not enable us to ascertain with certainty the exact physical location of the computer or to determine the infringer's identity. It only enables us to trace the infringer's access to the Internet to a particular ISP and, in some instances, to a general geographic area. Subscribing to and setting up an

account with an ISP is the most common and legitimate way for someone to gain access to the Internet. An ISP can be a telecommunications service provider such as Verizon, an Internet service provider such as America Online, a cable Internet service provider such as Comcast, or even an entity such as a university that is large enough to establish its own network and link directly to the Internet.

16. Here, the IP addresses Excubitor identified for Plaintiff enable us to determine which ISP was used by each infringer to gain access to the Internet. Publicly available databases located on the Internet list the IP address ranges assigned to various ISPs. However, some ISPs lease or otherwise allocate certain of their IP addresses to other unrelated, intermediary ISPs. Since these ISPs consequently have no direct relationship -- customer, contractual, or otherwise -- with the end-user, they are unable to identify the Doe Defendants through reference to their user logs. The intermediary ISPs' own user logs, however, should permit identification of the Doe Defendants. We determined that the Doe Defendants here were using those ISPs listed in Schedule A to Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference together with various other ISPs operating both within and outside West Virginia, to gain access to the Internet and distribute and make available for distribution and copying Plaintiff's copyrighted motion picture.

17. We downloaded the entire motion picture, and other identifying information described above, reviewed it and added such information to our monitoring system. Subsequently, we created evidence logs for a small part of the motion picture file for each Doe Defendant. Once ISP's are provided with the IP address, plus the date and time of the infringing activity, the Doe Defendant's ISPs quickly and easily can use their respective subscriber logs to identify the name and address of the ISP subscriber who was assigned that IP address at that date and time.

**Confirmation of Downloaded Material**

18. I am also responsible for identifying on-line piracy of motion pictures for Excubitor, including gathering evidence of on-line piracy to support counsel's copyright protection enforcement efforts.

19. As part of my responsibilities at Excubitor, I have been designated to confirm that the digital audiovisual files downloaded by Excubitor are actual copies of Plaintiff's Motion Picture. It is possible for digital files to be mislabeled or corrupted; therefore, Excubitor (and accordingly, Plaintiff) does not rely solely on the labels and metadata attached to the files themselves to determine which motion picture is copied in the downloaded file, but also to confirm through a visual comparison between the downloaded file and the Motion Picture themselves.

20. As to Plaintiff's copyrighted Motion Picture, as identified in the Complaint, I or one of my assistants have watched a DVD (or VHS) copy of the Motion Picture provided by Plaintiff. The downloaded files have been carefully reviewed and compared by a visual comparison with the original motion picture. We have confirmed that they contain a substantial portion of the motion picture identified in the Complaint.

21. Plaintiff's Motion Picture continues to be made available for unlawful transfer and distribution using P2P protocols, in violation of Plaintiff's exclusive licensing and distribution rights, and rights in the copyright. Adult Copyright Company and Excubitor continue to monitor such unlawful distribution and transfer of Plaintiff's Motion Picture and to identify infringers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 2, 2010 at my Offices in Karlsruhe, Germany.

Matthias Schroeder Padewet